# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jacobs Trading, LLC,<br><br>             Plaintiff,<br><br>v.<br><br>American Eagle Trading Group, LLC, and<br>Kurt Marshall,<br><br>             Defendants. | Case No. 16-cv-00406 (SRN/KMM)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Geoffrey P. Jarpe and Charles G. Frohman, Maslon LLP, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402, for Plaintiff.

Joshua A. Hasko, Messerli & Kramer P.A., 100 South Fifth Street, Suite 1400, Minneapolis, MN 55402, and Lawrence B. Lambert, Law Office of Lawrence B. Lambert, 9100 South Dadeland Boulevard, Suite 400, Miami, FL 33156, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

Plaintiff Jacobs Trading, LLC ("Jacobs Trading"), a Minnesota limited liability company, brought this suit against Defendants American Eagle Trade Group, LLC ("American Eagle"), a Florida limited liability company, and Kurt Marshall, its president, alleging claims for account stated/breach of contract and breach of the implied covenant of good faith and fair dealing against American Eagle, and breach of guaranty against

Marshall. Defendants now move the Court to dismiss the Complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). In the event the Court finds jurisdiction to be appropriate here, Defendants also offer a number of alternative theories for dismissal, including forum non conveniens,[1] failure to state a claim upon which relief can be granted, and failure to join an indispensable party. *See id.* at 12(b)(6) and (7). Finally, Defendants seek an award of costs, including attorney's fees, incurred in connection with a prior related action. *See id.* at 41(d). For the reasons set forth below, Defendants' Motion [Doc. No. 15] is granted in part, denied in part, and denied as moot in part.

## II.   BACKGROUND

The present dispute arises from an apparently fruitful, multi-year business relationship that—as all too frequently happens—went sour in its final months. Both Jacobs Trading and American Eagle are engaged in the same general line of business, which consists of purchasing, consolidating, and reselling "overstock, returned, and irregular merchandise," typically acquired from primary retailers or ancillary sources. (*See* Marshall Decl. [Doc. No. 19] ¶¶ 8, 11, 15; Compl. [Doc. No. 1] ¶ 5.) Starting in 2008 and continuing through late 2014, American Eagle would purchase semi-trailer loads of such merchandise from Jacobs Trading, and then reship those loads overseas, primarily to customers in Latin America. (Webert Decl. [Doc. No. 26] ¶ 3; Mocol Decl.

---

[1] For reasons discussed *infra*, the Court will treat Defendants' motion to dismiss on the basis of the common law doctrine of forum non conveniens as a motion to transfer venue pursuant to statute. *See* 28 U.S.C. §§ 1406, 1631.

[Doc. No. 25] ¶ 2; Marshall Decl. ¶ 8.)  By any measure, the connection between the companies was considerable: over the course of six years, American Eagle acquired thousands of shipments from Jacobs Trading under 1,791 separate invoices, at a cost of $42,581,775.22.  (Compl. ¶ 7; Mocol Decl. ¶ 3.)

While the parties seemingly agree that these facts establish the existence of an extensive business relationship between American Eagle and a Minnesota-based business,[2] the record is generally devoid of direct contacts between Defendants and Minnesota itself.  There is no dispute, for instance, that neither American Eagle nor Marshall own or have ever owned property in Minnesota.  (Marshall Decl. ¶¶ 3, 5.) Likewise, American Eagle has never maintained an office in Minnesota, nor has it employed anyone in any capacity within the state.  (*Id.* at ¶¶ 6, 7.)  The only apparent visits to Minnesota made by an American Eagle employee during the course of the parties' relationship—or at any time, for that matter—were two visits by Marshall, made in 2011 and 2013.  (*Id.* at ¶¶ 9-11.)  The first visit was to meet a representative of an unrelated Minnesota company, on business unrelated to the present suit.  (*Id.* at ¶ 10.) The second visit involved a visit to Jacobs Trading to discuss the possible purchase of a load of women's undergarments that Jacobs Trading had recently acquired.  The parties

---

[2] Defendants note that between 2011 and 2015, the Jacobs Trading entity was owned by a Delaware-based corporation, Liquidity Services, Inc.  (*See* Hasko Decl. [Doc. No. 20], Exs. 2, 3.)  However, there does not appear to be any dispute that Jacobs Trading remained headquartered in and operated from Hopkins, Minnesota during this time, or that Defendants were aware of this fact.

do not dispute, however, that Marshall's visit was made at the request of Jacobs Trading, or that American Eagle declined to purchase the undergarments at that time.  (*Id.* at ¶ 11.)

Of further interest, although American Eagle and Jacobs Trading entered into over 1,700 transactions over the course of their relationship, it appears that few, if any of the shipments underlying those transactions originated in Minnesota, and it is undisputed that none of those directly relating to the causes of action here did.  (*Id.* at ¶ 18.)  Instead, those shipments originated in Arkansas, South Carolina, New York, and Florida.  (*Id.*)  Upon arrival at American Eagle's own warehouses, the goods were generally transshipped overseas.  (*Id.* at 8; Compl. ¶ 6.)  The evidence in the record indicates that American Eagle has never sold any merchandise in the state of Minnesota.  (Marshall Decl. ¶ 8.)  Likewise, although Jacobs Trading avers that it ultimately conducts its banking in Minnesota, the undisputed record indicates that American Eagle wired all its payments relating to the parties' dealings to a bank in New York.  (*See* Mocol Decl. ¶ 4; Marshall Decl. ¶ 16.)

In sum, while the parties had a long and continuous business relationship, direct contacts between Defendants and Minnesota apparently consist of little more than the length and scope of the parties' association, two visits by Marshall to the forum, and the fact that communications by telephone, email, and other means were directed there. Jacobs Trading does further allege that American Eagle was the party responsible for initiating their business relationship, and that it solicited all of the transactions underlying

4

the present claims.  (*See* Compl. ¶¶ 9, 12.)  But both allegations are vigorously disputed by Defendants.  (*See* Marshall Decl. ¶ 17)

Whatever the state of the parties' contacts, their relationship appears to have been generally amicable for several years, hampered only by occasional indications that American Eagle had liquidity problems.  (*See, e.g.*, Marshall Aff. [Doc. No. 34], Ex. 1 at 6, 7, 9; Webert Decl., Ex. A at 7, 16-17.)  Apparently to alleviate these concerns, on May 16, 2014, Marshall sent an email to Irwin Jacobs, Jacobs Trading's founder and then-manager, promising to "personally guarantee all money due on all purchases made from Jacobs Trading past and future."  (Compl., Ex. A. at 2.)  The parties dispute the legal significance of this email, but Jacobs Trading alleges that as a practical matter it was essential to its decision to continue dealing with American Eagle.  (Compl. ¶ 8.)  Despite the guarantee, Jacobs Trading went unpaid for forty loads of goods shipped to American Eagle between September and November 2014—the last transactions made by the parties, and those underlying the claims of this suit—worth a total of $1,323,010.  (Compl. ¶ 9.)

On the basis of this unpaid debt, Jacobs Trading commenced suit against American Eagle and Marshall in Florida state court in 2015 ("the Florida action").  (*See* Lambert Decl. [Doc. No. 18], Ex. 4.)  The case was litigated there for eight months through the motion to dismiss stage, at which time Jacobs Trading voluntarily dismissed the complaint.  (*Id.*, Ex. 3.)  Two days later, the case was re-filed in this Court on substantially the same claims.  (*Id.*; Compl.).  The parties dispute the reason for these actions—according to Jacobs Trading, a change of ownership in early 2016 which saw

the company reacquired by Irwin Jacobs and his family brought with it a new litigation strategy, which determined that the claims involved in the Florida action should have been brought in Minnesota from the outset.   (Compl. ¶ 12.)   In marked contrast, Defendants allege that the move to a more inconvenient forum was intended to accomplish nothing more than harassment.   (Def.'s Mem.in Supp. of Mot. to Dismiss [Doc. No. 17] ("Def.'s Mem. in Supp.") at 3-4.)   Motive aside, the present suit was commenced on February 17, 2016, and Defendants now move for its dismissal.

## III.   PERSONAL JURISDICTION

### A.   Legal Standard

When a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of showing that the court's exercise of jurisdiction is proper.  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).   The plaintiff may meet this burden by pleading facts sufficient to "support a reasonable inference that the defendant[] can be subjected to jurisdiction within the [forum] state."  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).   This inference is subject to testing not solely on the pleadings alone, however, but "by the affidavits and exhibits presented with the motions and in opposition thereto."  *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted).   Where—as is the case here—the Court has not conducted an evidentiary hearing, it must view the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.  *Pangaea, Inc. v.*

*Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).  However, "the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath*, 760 F.3d at 820.

      In order to make a determination that an exercise of personal jurisdiction over a defendant is proper, a federal court sitting in diversity must first determine that certain state and constitutional prerequisites have been met. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (citation omitted).  First, the facts presented must satisfy the forum state's long-arm statute.[3]  *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).  Second, the assertion of jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment.  *Id.*  Because the Minnesota Supreme Court has interpreted the Minnesota long-arm statute to be coterminous with the limits of due process, however, this Court need only address the second of these requirements here.  *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991) (citing *Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985)).

      The bounds of due process permit a court to exercise personal jurisdiction over a non-resident defendant when that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).  Underlying this standard is the conviction that

---

[3] Here, Minn. Stat. § 543.19.

"those who live or operate primarily outside a State have a . . . right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality opinion). Thus, the Supreme Court has made clear that there must be some showing that the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defendant himself must create these connections—unilateral activity by the plaintiff within the forum, even if directly related to the defendant, is not sufficient to satisfy this requirement. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

While due process demands minimum contacts as a prerequisite to any finding of personal jurisdiction, the nature of those contacts affect how far removed from the cause of action they may be and yet still figure in the court's analysis. The Supreme Court has recognized that a forum's jurisdiction over a defendant may be either "general," meaning that the defendant's contacts with the forum are so "continuous and systematic" that they justify maintaining suit even on causes of action unrelated to those contacts, or "specific," in which case jurisdiction is appropriate only where there is an "affiliatio[n] between the forum and the underlying controversy."[4] *See Walden*, 134 S. Ct. at 1121 n.6 (citation omitted).

---

[4] The Supreme Court has illustrated the conceptual difference between the proper application of general and specific jurisdiction using the following hypotheticals: "*First*, if a California plaintiff, injured in a California accident involving a [Defendant]-manufactured vehicle, sued [Defendant] in California court alleging that the vehicle was defectively designed, that court's adjudicatory authority would be premised on specific jurisdiction. . . . *Second*, if a similar accident took place in Poland and injured Polish

Because Jacobs Trading asserts that both Defendants are subject to this Court's jurisdiction under either theory, the Court will consider them both here.

### B.      General Jurisdiction

Jacobs Trading contends that this Court may exercise general jurisdiction over Defendants because the long-term, uninterrupted relationship between the parties—covering six years, hundreds of transactions, and millions of dollars—demonstrates the sort of "continuous and systematic" contact with Minnesota required by the Supreme Court's general jurisdiction analysis.  (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss [Doc. No. 23] ("Pl.'s Resp.") at 6-7.)  At one point, these contacts may indeed have sufficed to render Defendants amenable to suit in Minnesota on all causes of action—but such is no longer the case today.  In the past five years, two cases decided by the Supreme Court—*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)—have dramatically limited the sort of fact patterns that will support general jurisdiction.  First, in *Goodyear*, the Court explained that substantial affiliations with the forum, even over an extended period of time, are not sufficient unless they "render [the defendant] essentially at home in the forum State."  *Goodyear*, 564 U.S. at 919.  By way of illustration of the strictness of this requirement, the Court noted that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's

---

plaintiffs sued [Defendant] in California court, the question would be one of general jurisdiction."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 n.5 (2014).

9

domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924.

Three years later, in *Daimler*, the Court used this pronouncement to reject a claim that the defendant was subject to California general jurisdiction simply because its subsidiary (Mercedes-Benz) distributed vehicles in that state.  There, the Court tightened its holding in *Goodyear* by declaring that the paradigm forum for a corporation is "the place of incorporation and principal place of business." *Daimler*, 134 S. Ct. at 760.  While the Court did not say that the defendant's forum of domicile was the *only* place where general jurisdiction could exist, it did make clear that a contrary determination would require "an exceptional case." *Id.* at 761 n.19.  Specifically, however, the Court rejected as "unacceptably grasping" any formula that would "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Id.* at 761.

Applying the restrictive standard espoused by *Goodyear* and *Daimler*, judges in this district have, in cases similar to the one at hand, adopted a narrow reading of where a defendant is jurisdictionally "at home."  Thus, for instance, in *Lexion Medical, LLC v. SurgiQuest, Inc.*, 8 F. Supp. 3d 1122 (D. Minn. 2014), this Court held that a non-resident medical device company that had an "ongoing, multiyear relationship" with a Minnesota hospital, often involving sales on a weekly basis, was not subject to its general jurisdiction. *See Lexion*, 8 F. Supp. 3d at 1126-28.  In reaching this conclusion, the Court said:

> Though it has repeatedly transacted business with [the Minnesota hospital], a
> corporation's "continuous activity of some sorts within a state" will not

suffice, and neither will repeated purchases, "even if occurring at regular intervals." Nor is the calculus changed by the fact that a smattering of other connections exist between Minnesota and SurgiQuest, such as one employee residing here or employees having traveled here in connection with the sale of [the Minnesota hospital].

*Id.* at 1128 (quoting *Goodyear*, 564 U.S. at 927, 928) (internal citations omitted). *See also Cortec Corp. v. Transilwrap Co., Inc.*, No. 14-cv-3261 (JNE/JSM), 2015 WL 164173, at *3 (D. Minn. Jan. 13, 2015) (rejecting assertion of general jurisdiction over defendant who did a "substantial amount of business in Minnesota on an ongoing basis," and noting that "under the governing precedent [*Goodyear* and *Daimler*] . . . "'at home' is not synonymous with 'doing business.'").

Here, the factors that Jacobs Trading alleges are sufficient to support the exercise of general jurisdiction over Defendants—a consistent course of dealings with a company located in the forum, over a long period of time—do not constitute the sort of "exceptional" contacts that would distinguish this case from *Lexion* or *Cortec*, much less *Goodyear* and *Daimler*. At no point does Jacobs Trading allege that Defendants are domiciliaries of Minnesota (as, of course, they are not). Absent such a "paradigmatic" contact with the forum, Jacobs Trading's argument extends no further than the "substantial, continuous, and systematic course of business" line of reasoning that was expressly rejected by the Supreme Court in *Daimler. See Daimler*, 134 S. Ct. at 761. Without more, general jurisdiction is not appropriate here over either Defendant.[5]

---

[5] In support of its contention that this Court can exercise general jurisdiction over Defendants, Plaintiff cites two cases from this District that found general jurisdiction

11

### C.      Specific Jurisdiction

As previously noted, specific jurisdiction differs from general in that the former is only appropriate where the cause(s) of action underlying the suit either "arise out of or relate to" the defendant's contacts with the forum state.  *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Here, because the claim brought against Kurt Marshall in his individual capacity (breach of guaranty) is distinct from those brought against American Eagle, the jurisdictional analysis for each defendant must necessarily be conducted separately.  The Court will begin with a discussion of Marshall's "case-linked" contacts with the forum.  *See Walden*, 134 S. Ct. at 1122 n.6.

Because Marshall is being sued in his individual, and not his professional, capacity, the Court notes that the contacts that matter for jurisdictional purposes are likewise his personal, and not his professional, ones.  Under the "fiduciary shield doctrine," a corporate officer's actions made in an official capacity "do not create personal jurisdiction over that officer as an individual but may be used to subject the corporation to jurisdiction."  *Sanford*

---

appropriate under similar facts.  *See Rockland Indus. Holdings, LLC v. Container Navigation Corp.*, No. 14-cv-4662 (ADM/JSM), 2015 WL 868069 (D. Minn. Feb. 27, 2015); *Lyon Fin. Servs., Inc. v. bioMerieux, Inc.*, 636 F. Supp. 2d 843 (D. Minn. 2007).  The Court finds neither to be persuasive here: *Lyon* was decided prior to the Supreme Court's decisions in *Goodyear* and *Daimler*, and thus reflects a superseded understanding of general jurisdiction; in contrast, while *Rockland* was decided recently, it is a brief opinion that contains no discussion of either *Goodyear* or *Daimler*, and indeed does not make clear whether jurisdiction was general or specific.

*v. Maid-Rite Corp.*, No. 13-cv-2250 (MJD/LIB), slip op. at 11 (D. Minn. Jan. 3, 2014) (quoting *Garber v. Jack's Corn Crib*, No. 4-86-740, 1988 WL 74280 (D. Minn. July 18, 1988)).  Thus, as the Eighth Circuit has noted, "[t]he law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." *Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986).

Since the Court cannot consider Marshall's contacts with the forum that were made in his capacity as American Eagle's president, few contacts exist.  Jacobs Trading apparently acknowledges, for instance, that Marshall's visits to Minnesota were on behalf of American Eagle.  (*See* Compl. ¶ 7.)  Certainly the emails contained in the various exhibits were.  (*See, e.g.*, Marshall Aff., Ex. 1.)  The only "personal" contact with the forum is the email in which Marshall allegedly personally guaranteed American Eagle's debts.  ( *See* Compl., Ex. A. at 2.)  But settled law in the Eighth Circuit makes clear that simply guaranteeing a debt owed to a Minnesota company, standing alone, is insufficient to warrant specific jurisdiction.  *See Ark. Rice Growers*, 797 F.2d at 573 ("The mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation does not subject the guarantors to jurisdiction in Arkansas.").  Because Jacobs Trading has not adduced any additional evidence of personal contacts between Marshall and Minnesota, the Court can only conclude that it lacks the necessary Constitutional authority to exercise specific personal jurisdiction over Marshall.

Whether this Court can assert specific jurisdiction over American Eagle presents a more difficult question.  As a threshold matter, the parties dispute what contacts are relevant to the analysis—Jacobs Trading contends that contacts developed over the whole six-year relationship should be considered, while American Eagle would generally have the Court look no further than the contacts immediately related to the forty transactions underpinning this litigation.  (*See* Pl.'s Resp. at 3, 5-6, 10; Def.'s Mem. in Supp. at 8-10, 12-14.)  The leading relevant pronouncement of the Supreme Court—that the plaintiff's injuries must "arise out of or relate to" the defendant's activities in the forum, *Burger King*, 471 U.S. at 472—does not clearly resolve the dispute.  As other courts have recognized, a cause of action that must "arise out of" the defendant's actions would conceivably limit the court's analysis to a much narrower field of contacts than where the cause of action must only "relate to" those actions.  *See, e.g.*, *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994); *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992); *Educ. Testing Serv. v. Katzman*, 631 F. Supp. 550, 560-61 (D.N.J. 1986).  Unfortunately, the Supreme Court has expressly refused to say what, if any, distinction exists between the terms.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.10 (1984) ("[W]e decline to reach the questions (1) whether the terms 'arising out of' and 'related to' describe different connections between a cause of action and a defendant's contacts with a forum, and (2) what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection exists.").  Taking up the task, the Eighth Circuit has generally advocated a "flexible approach" to this dilemma, which focuses on

14

"the totality of the circumstances" in deciding what contacts are relevant. *Myers*, 689 F.3d at 913 (quotation and citations omitted).

Beyond this fundamental clash regarding the scope of the Court's inquiry, the parties also disagree regarding several key fact issues. Most notably, there is no agreement regarding which party either (a) initially sought out the relationship; or (b) initiated the forty transactions that are central to the dispute. (*See* Compl. ¶¶ 6, 9; Pl.'s Resp. at 3, 6-7; Def.'s Mem. in Supp. at 12.) Where, as here, other contacts between the Defendant and the forum are slim, the answer to these questions might well be dispositive as to whether this Court can subject American Eagle to its jurisdiction. The Supreme Court has made clear, for instance, that "with respect to interstate contractual obligations . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 338 U.S. 643, 647 (1950)). In other words, where individuals "purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id* (quotations omitted). Thus, in *Burger King* for instance, the Court found that specific jurisdiction in Florida was appropriate even though the Michigan defendant had only minimal direct contacts with the forum, because the defendant had reached out to the plaintiff in Florida in pursuit of a business relationship. *Id.*

at 487. This conclusion—that the defendant's status as the "aggressor" in an interstate business transaction is an important jurisdictional contact—has likewise been embraced by both federal and state courts in Minnesota. *See, e.g.*, *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1073 (D. Minn. 2014); *Marquette Natl' Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 296 (Minn. 1978).

Given the importance of this factor to the Court's jurisdictional decisionmaking, Jacobs Trading fairly reminds the Court that at this procedural posture, all factual disputes must be resolved in favor of the non-moving party. (*See* Pl.'s Suppl. Mem. in Resp. to Def.'s Mot. to Dismiss [Doc. No. 37] ("Pl.'s Suppl. Mem.") at 4 n.3.) But this fact is unusually important in the resolution of this matter, and Jacobs Trading's position is unusually subject to doubt, in light of previous statements made in the Florida action that suggest it may have been the party that initiated at least some of the transactions at issue. (*See, e.g.*, Lambert Decl., Ex. 4 at 3.) Accordingly, the Court would normally be inclined to order limited jurisdictional discovery to resolve this and other factual disputes that are important to the resolution of this issue. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589 (8th Cir. 2011) (observing that jurisdictional discovery may be warranted where "certain facts necessary to resolving the jurisdictional inquiry are either unknown or disputed") (quotation and citation omitted). For reasons made clear below, however, the Court ultimately concludes that it need not reach the issue of whether specific jurisdiction exists over American Eagle. Instead, having found that it cannot exercise

jurisdiction over at least one of the defendants in this matter, the Court finds that the interests of justice compel transfer of this case to the Southern District of Florida.

## IV.   TRANSFER OF VENUE

As an alternative to dismissal for lack of personal jurisdiction, Defendants have requested that the Court dismiss this case on the basis of the common law doctrine of forum non conveniens.  The Eighth Circuit has made clear, however, that the ability of federal courts to dismiss cases over which they have subject matter jurisdiction on the grounds of forum non conveniens "has been substantially eliminated" by the federal transfer of venue statutes.  *Bacon v. Liverty Mut. Ins. Co.*, 575 F.3d 781, 783 (8th Cir. 2009).  Indeed, that doctrine now "has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citations and quotation omitted).  Where, as is the case here, transfer may be made "wholly within the system of U.S. federal courts," this Court effectively no longer has the power to dismiss the case outright on grounds that another venue would be a better fit for the parties or the underlying issues. *See Bacon*, 575 F.3d at 783 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002)).  For this reason, and because the parties have both conceded that transfer pursuant to statute is a proper alternative to outright dismissal, the Court will treat

Defendants' motion to dismiss on the basis of forum non conveniens as a motion to transfer. *See* 28 U.S.C. §§ 1404, 1406, 1631.

Although neither party has questioned its authority to do so, the Court notes that lack of jurisdiction over one (or both) Defendants is not a bar to transfer.  In *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962), the Supreme Court first considered whether a district court's attempt to transfer a case was rendered ineffective because, among other defects, it lacked personal jurisdiction over the defendants.  The Court concluded that it was not.  Looking to the transfer of venue statute upon which the district court based its decision (28 U.S.C. § 1406), the Court noted that the statute's clear underlying purpose was to "remove[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits."  *Goldlawr*, 369 U.S. at 466-67. Nothing in the language of the statute indicated that "the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants."  *Id.* at 465.

Seizing upon this decision, courts around the country have found transfer to be permissible where a court lacks personal jurisdiction over a defendant, whether under section 1404, 1406, or under the newer section 1631,[6] which was not yet in existence at

---

[6] 28 U.S.C. § 1631 was first enacted in 1982, and provides, in part, that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ."

the time of *Goldlawr*.  *See, e.g.*, *Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986) (transfer under § 1404); *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980) (transfer under § 1406); *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1526 (10th Cir. 1987) (transfer under § 1631).  The Eighth Circuit in particular was a quick adopter, holding in *Mayo Clinic v. Kaiser*, 383 F.2d 653 (8th Cir. 1967) that *Goldlawr* had broadly implied that section 1406 could be used to effect transfer "whenever there exists 'an obstacle [to] . . . an expeditious and orderly adjudication' on the merits," including lack of personal jurisdiction.  *Mayo Clinic*, 383 F.2d at 655-56.

Although the Eighth Circuit has not had occasion to consider whether section 1406 provides a basis for transfer where jurisdiction is proper over one defendant but not another, this Court has previously concluded it does.  In *St. Paul Fire & Marine Ins. Co. v. Servidone*, 778 F. Supp. 1496 (D. Minn. 1991), the Court determined that personal jurisdiction was proper over two of five defendants, but not the other three.  *St. Paul Fire & Marine*, 778 F. Supp. at 1507.  In deciding whether to dismiss those three defendants or to transfer the whole case to the Northern District of New York, the Court rejected the claims of the defendants that transfer was not an available procedural option.  Relying on *Goldlawr*, it held that even though it had personal jurisdiction over only some of the defendants, it retained the power to transfer the whole case.  *Id.* at 1508 ("The Court therefore has the power to transfer this action, notwithstanding the fact that it lacks personal jurisdiction over some of the defendants.").  Though the Court ultimately concluded that the interests of justice merited severing the three defendants rather than

19

transferring, the principle that transfer is appropriate where personal jurisdiction is lacking over some but not all defendants has clearly been established in this district.  In other districts, including at least one in the Eighth Circuit, however, courts have gone beyond *St. Paul Fire & Marine* and actually transferred the case where jurisdiction was split as to some defendants.  *See, e.g.*, *Nichols v. MMIC Ins. Co.*, No. 4:14-cv-04025-KES, 2015 WL 2365537, at *2 (D.S.D. May 15, 2015) (finding that the interests of justice favored transfer of whole case rather than severing defendants over whom the court lacked jurisdiction); *Milligan Elec. Co. v. Hudson Const. Co.*, 886 F. Supp. 845, 850-51 (N.D. Fla. 1995) (same).

The net result of this analysis is that lack of jurisdiction over one defendant but not the other is no bar to this Court's authority to transfer venue, and that (at least in the Eighth Circuit), section 1406 is the proper mechanism to do so.[7]  Under that section,

---

[7] As noted, courts around the country have variously relied on sections 1404, 1406, and 1631 as the procedural basis for transfer where personal jurisdiction is lacking over the defendant.  The Eighth Circuit has generally chosen to rely on section 1406.  *Mayo Clinic*, 383 F.2d at 655-56.  In 2013, however, the U.S. Supreme Court indicated in dicta that section 1406 is meant to apply only to cases where venue is improper under the venue statute, 28 U.S.C. § 1361, and not to other instances of "wrong" venue.  *Atlantic Marine Const. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 577 (2013).  Whether this ruling has overruled *Mayo Clinic* as it applies to cases such as this one is not yet clear—notably, at least one court in the Eighth Circuit has applied section 1406 to transfer jurisdiction under circumstances similar to the present matter since *Atlantic Marine* was decided.  *See Nichols*, 2015 WL 2365537.  Because the Eighth Circuit has previously indicated that section 1631 also provides a basis for transfer where personal jurisdiction is lacking, and because the underlying standard ("interests of justice") is the same as for section 1406, this Court concludes that transfer would be appropriate under section 1631 as an alternative to section 1406.  *See Johnson v. Woodcock*, 444 F.3d 953, 954 n.2 (8th Cir.

transfer where venue is improper is appropriate "if it be in the interest of justice," to "any district or division in which it could have been brought."   28 U.S.C. § 1406(a).   For several reasons, this Court concludes that the interests of justice favor transfer of this case to the Southern District of Florida.  First, severing Marshall from this case but leaving the company of which he is president and one of only two shareholders (the other being his wife) a defendant here in Minnesota would effectively leave him no better off than he is now, as he would still be forced to return here as a witness and for other reasons. Likewise, given that Defendants' exhibits suggest it is not unlikely that Jacobs Trading would re-file suit against Marshall in Florida, severing him could well act as an unintended punishment, forcing him to participate in and manage suits in different jurisdictions at the same time.  (*See* Marshall Decl., Exs. B, C.)  *See Milligan Elec.*, 886 F. Supp. at 850 (noting the "awkward[ness]" of requiring only one defendant to remain in the transferor district).   Second, considerations of judicial economy counsel that two courts should not simultaneously hear two cases tied to the same general facts.  *See, e.g.*, *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 936-39 (E.D. Va. 2005); *Milligan Elec.*, 886 F. Supp. at 851. For similar reasons, it makes little sense to require duplicative testimony and travel by witnesses, many of whom no doubt would be the same for both cases.  *Cf. Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 793 (D. Minn. 2010) (discussing the importance of witness convenience as a factor in related

---

2006); *see also Am. Registry of Radiologic Technologists v. Bennett*, 655 F. Supp. 2d 944, 946-47 (D. Minn. 2009).

section 1404 analysis).  Finally, the Court is of the opinion that Jacobs Trading's choice of Minnesota as a forum is entitled to little or no weight in this instance, because it originally chose to file this case in Florida—suggesting that it will not be unduly burdened if forced to prosecute it there.[8]

For the above reasons, the Court concludes that transfer of this case to the United States District Court for the Southern District of Florida is the most appropriate disposition here.

## IV.   OTHER MATTERS

Because of the Court's decision to transfer this case, it need not address Defendants' alternative theories of dismissal for failure to state a claim upon which relief can be granted, and failure to join an indispensable party.  *See* Fed. R. Civ. P. 12(b)(6) and (7).  The only remaining issue, therefore, is Defendants' motion for costs incurred in the Florida action, pursuant to Fed. R. Civ. P. 41(d).   Under that rule, "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied."  As this Court has previously noted, "[a]pplication of Rule 41(d)

---

[8] The Court is also mindful of the fact that Defendants' exhibits suggest that at least one reason why Jacobs Trading chose to dismiss the Florida action and to refile in Minnesota was to increase the burden of litigation on the Defendants, which is not a proper purpose. (*See* Marshall Decl., Exs. B, C.)

is permissive in nature." *Pope v. Wells Fargo Bank, N.A.*, No. 11-2496 (SRN/FLN),
2012 WL 1886493, at *6; *see also United Transp. Union v. Maine Central R. Co.*, 107
F.R.D. 391, D. Me. 1985) ("Rule 41(d) is intended to confer a broad ambit of discretion
upon federal courts."). After considering the arguments of the parties on the matter, the
Court declines to exercise its discretion here.

## V.   ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY
ORDERED** that:

1.   Defendants' Motion to Dismiss for lack of personal jurisdiction [Doc. No. 15]
     is **GRANTED** in part and **DENIED** as moot in part;

2.   Defendants' Motion to Transfer Venue [Doc. No. 15] is **GRANTED**;
     a. This action is transferred to the United States District Court for the
        Southern District of Florida; and
     b. The Clerk of Court is directed to effect the transfer.

3.   Defendants' Motion to Dismiss for failure to state a claim upon which relief
     can be granted [Doc. No. 15] is **DENIED** as moot;

4.   Defendants' Motion to Dismiss for failure to join an indispensable party
     [Doc. No. 15] is **DENIED** as moot; and

5.   Defendants' Motion for Costs pursuant to Fed. R. Civ. P. 41(d) [Doc. No. 15]
     is **DENIED**.


Dated:  September 28, 2016              s/Susan Richard Nelson_____
                                        SUSAN RICHARD NELSON
                                        United States District Judge